Soble et al., Appellants, *v.* Hines.

Argued May 24, 1943. Before MAXEY, C. J.; DREW, LINN, STERN, PATTERSON, PARKER and STEARNE, JJ.

*Morris H. Goldman,* with him *Wolf, Block, Schorr & Solis-Cohen,* for appellants.

*Wm. L. Hammond,* with him *David R. Perry,* Special Deputy Attorney General, and *James H. Duff,* Attorney General, for appellee.

OPINION BY MR. JUSTICE HORACE STERN, June 30, 1943:

This controversy involves the construction of certain sections of the Unemployment Compensation Law of December 5, 1936, P. L. (1937) 2897, before they were amended by the Act of April 23, 1942, P. L. 60.

Plaintiffs were engaged for several years as a partnership in the operation of a chain of retail drug stores in Pennsylvania, but on April 30, 1940, they discontinued their business, which was taken over by a corporation. On April 29, 1940, they had contributed the sum of $3,194.69 to the Unemployment Compensation Fund of the Commonwealth, covering the wages paid by them during the first quarter of that year. On May 31, 1940, they applied to the Department of Labor and Industry for a refund of this payment. Their petition being disallowed, they obtained a writ of alternative mandamus, but the court below, on defendant's motion, quashed the writ.

The application for a refund was based upon Section 311 of the Act of 1936 as follows: "If, not later than one year from the payment of any contribution, . . . an employer shall make application . . . for a refund thereof and the department shall determine that such contribution . . . was erroneously collected for any reason whatever, *including the failure to employ one or more employes . . . for some portion of each of some twenty days during the calendar year, each day being in a different week, for which the contributions were made,* the department . . . shall refund said amount without interest out of moneys to the credit of the Employers' Contribution Account in the Unemployment Compensation Fund." Plaintiffs come under the express wording of this section inasmuch as they did not employ persons for some portion of each of twenty weeks in the year 1940, since they were in business only seventeen weeks during that year.

By section 301 of the act it was provided that "Each employer who has employed eight or more employes

. . . in employment for some portion of each of some twenty days . . . during a calendar year, each day being in a different week, *shall pay for each such calendar year* . . . contributions into the Unemployment Compensation Fund . . ." It was thus made obligatory on employers to contribute to the Fund for a given calendar year only if there was an employment *in that year* for a portion of each of twenty weeks.

As against these wholly unambiguous provisions, the Department of Labor and Industry invokes section 303 (b) of the act as follows: "Any employer subject to this act shall cease to be so subject and shall be relieved of the payment of contributions, only upon written application to the department and finding by the department that he has not employed any employe . . . in employment subject to this act for some portion of each of some twenty days, each day being in a different week, *during the previous or current calendar year* . . ." The Department contends that, since plaintiffs were subject to the act at the beginning of the year 1940, they could be relieved from further obligation thereunder only in the manner thus prescribed, that unless and until such relief was granted the contributions were not "erroneously collected" and therefore could not be refunded, and that, if application for relief had been made, it would not have been allowed in view of the fact that plaintiffs had had employes in their employ for more than twenty weeks during the *previous* calendar year, that is, the year 1939.

As far as the matter of *procedure* is concerned we find no difficulty in reconciling sections 303 (b) and 311. It is absurd to maintain that any contributions paid prior to obtaining relief under section 303 (b) could not have been "erroneously collected" and therefore would not be subject to refund under section 311. This would be equivalent to holding that a refund would never be possible, for if, in order to be entitled to one, the employer must first have obtained relief from the obliga-

tion, it would mean that a payment could be refunded only if it was never made! The framers of the act evidently realized the possibility that contributions might be paid during a calendar year, and thereafter, during that same year, an event might happen—such as the death of the employer, the discontinuance of the business, the reduction of the number of employes below the minimum of eight, or some similar circumstance—which would relieve the employer from the obligation imposed by section 301 to make contributions for that year. The prior payments would then, in the light of the facts which subsequently developed, have been "collected erroneously", and the remedy would necessarily be by way of refund and not by a previous application which it might have been impossible to make, or which, if made, might have been disallowed on the ground that it could not then be determined whether the employer, in the remaining portion of the calendar year, would bring himself within the conditions subjecting him to liability for that year.

It is true that the phrase in section 303 (b), "during the previous or current calendar year", presents some difficulty from a *substantive* standpoint, for it admits of the interpretation that, even though there be no employment during twenty weeks of the calendar year, the employer is not entitled to relief from contributions during that year if there had been employment for more than twenty weeks during the *preceding* year. In view, however, of the clear and explicit provisions of sections 301 and 311, such a construction of section 303 (b) cannot prevail.

By the Act of April 23, 1942, P. L. 60, the legislature changed the law so as to make it provide what the Department of Labor and Industry would now have us declare to be the proper construction of the Act of 1936 before this amendatory act was passed. The 1942 act amended section 301 by omitting therefrom the portion hereinbefore quoted that contributions were payable

only for the calendar year in which there was employment for part of each of twenty weeks. It amended section 303 (b) to read that "any employer subject to this act shall cease to be so subject only upon written application to the department and finding by the department that neither, (1) during the previous calendar year, nor (2) during that part of the current calendar year which precedes the date on which such application was filed, has he employed any employe . . . in employment subject to this act for some portion of each of some twenty days, each day being in a different week . . ." It amended section 311 by omitting therefrom the important clause: "including the failure to employ one or more employes . . . for some portion of each of some twenty days during the calendar year, each day being in a different week, for which the contributions were made." But the present case is governed by the Act of 1936 as *un*amended, and plaintiffs must be accorded the rights to which they were entitled under the law as it then stood.

We need not decide whether there should be deducted from a refund the amount of any benefits paid to employes from the beginning of the calendar year to the time when application for the refund is made, as there is nothing in the present record to indicate that any such benefits were in fact paid to plaintiffs' employes during such period.

Since the duty imposed upon the Department of Labor and Industry to make a refund where the contribution was erroneously collected is a mandatory one under the statute, not admitting of the exercise of any discretion, plaintiffs were justified in availing themselves of the remedy of mandamus: *Hotel Casey Co. v. Ross*, 343 Pa. 573, 23 A. 2d 737.

The order of the court below is reversed, and the motion to quash the alternative writ of mandamus is here dismissed.