## Imler v. Messner

*Storey & Bailey* and *Frank P. Barnhart,* for plaintiff.

*T. McKeen Chidsey,* Attorney General, and *Randolph C. Ryder,* for defendant.

NEELY, J., August 22, 1949.—This is an action of mandamus against defendant as Acting Secretary of Revenue of the Commonwealth of Pennsylvania, instituted in accordance with Pa. R. C. P. 1091 et seq. The complaint prays that defendant be commanded to permit plaintiff and her legal representative to take stenographic notes of testimony of any witness which may be examined or heard in the proceedings now pending and being held by the Secretary of Revenue for the purpose of determining the responsibility of one Patrick E. McCall for the motor vehicle accident which resulted in the death of plaintiff's husband.

Defendant filed preliminary objections under Pa. R. C. P. 1017($a$). Two reasons are set forth in support of the preliminary objections. The first reason is that paragraphs 10 to 12 inclusive of the complaint are impertinent as containing conclusions of law. This objection is raised under rule 1017($b$) (2) in the nature of a motion to strike off. The second reason is that the facts alleged in the complaint do not constitute a cause of action. This reason is advanced under rule 1017($b$) (4) in the nature of a demurrer. The questions raised by the demurrer are substantive and therefore will be given our first consideration.

The demurrer, for the purpose of argument, admits only the material and relevant matters that are well pleaded and does not admit conclusions of law: Henzel et al. v. Patterson Building and Loan Association No. 2 et al., 128 Pa. Superior Ct. 531 (1937) ; Cohen v. Carol et al., 153 Pa. Superior Ct. 596 (1943) ; Commonwealth ex rel. Davis v. Blume, 307 Pa. 406 (1932). The relevant and material factual allegations which we must consider on the demurrer are hereinafter set forth.

Plaintiff is the surviving widow of Jesse H. Imler, who died on October 13, 1948, as a result of personal injuries sustained on October 9, 1948, when Jesse H. Imler was struck by an automobile driven by one Patrick E. McCall. Plaintiff received notice, signed by T. E. Transeau, Director of Highway Safety, acting for defendant, that a hearing would be held at a certain time and place for the purpose of taking testimony to determine the responsibility of Patrick E. McCall for Imler's death. At the time and place fixed in such notice, plaintiff was represented by her attorney who appeared with his secretary, a competent stenographer, and requested permission from the hearing examiner to take stenographic notes of the testimony. The request was refused and the hearing was adjourned.

Plaintiff received a second notice of hearing, and at this hearing plaintiff's attorney appeared with his secretary and stenographer and again asked permission to take stenographic notes. Permission was again refused. Plaintiff's attorney insisted upon her right to have the notes taken, and thereupon the hearing was postponed at the instance of the examiner.

It is averred that plaintiff, as surviving widow of Jesse H. Imler, has a claim against Patrick E. McCall, based upon McCall's negligence in the operation of the automobile which struck her deceased husband, and that it is important in connection with the claim to have an exact copy of the testimony which Patrick E. McCall and other witnesses may give at the hearing "tending to show the manner in which the accident occurred". In her complaint plaintiff "avers that said hearing (is being) held pursuant to section 615 of the Act of May 1, 1929 and its amendments, 75 PS §192".

The ancient writ of mandamus is at common law a prerogative writ used to enforce the performance of an official or ministerial duty: 34 Am. Jur. 809, et seq. For the meaning of "prerogative writ" at common law, see Bouvier's Law Dictionary, 3rd ed., page 2671. An excellent definition of that writ is also found in Webster's International Dictionary, 2nd ed. Modern statutes have in many instances provided for the abolition of the writ and substituted therefor other forms of procedure in mandamus. These modern provisions, however, make practically no change in the function of the remedy. Generally speaking, the same relief is available and the substantive rights of the parties are now governed by the same principles that controlled in ancient times before any procedural changes. The action of mandamus now lies, as it did in antiquity, to compel the performance of an official or ministerial duty. Such now is and always has been

the purpose and concept of mandamus. The action is defined in Am. Jur., supra, as follows:

"Mandamus may be defined as a command issuing from a court of law of competent jurisdiction, in the name of the state or sovereign, directed to some inferior court, tribunal, or board, or to some corporation or person, requiring the performance of a particular duty therein specified, which duty results from the official station of the party to whom the writ is directed, or from operation of law."

See also section 2 of chapter 46, 11 Standard Pa. Practice.

Our courts have followed the ancient concept of mandamus as being the remedy by which a ministerial duty will be enforced: Tanenbaum v. D'Ascenzo et al., 356 Pa. 260, 262 et seq. (1947), citing many cases; Hotel Casey Co. v. Ross, 343 Pa. 573 (1942); Soble et al. v. Hines, 347 Pa. 536 (1943); Kaufman Construction Co. v. Holcomb et al., 357 Pa. 514, 520 (1947). In the Kaufman case the Supreme Court said:

"Indeed a writ of mandamus . . . may be used only to compel the performance of a purely ministerial or mandatory duty. . . . It is elementary that it cannot be used to control the exercise of discretion or judgment on the part of a public official or an administrative or judicial tribunal; nor to review or compel the undoing of action taken by such an official or tribunal in good faith and in the exercise of legitimate jurisdiction, even though, in fact, the decision rendered may have been wrong."

Mandamus is available as a remedy only where there is a clear legal right, and can never be invoked in doubtful cases. It is available only where there would otherwise be a failure of justice: Goodman et ux. v. Meade et al., 162 Pa. Superior Ct. 587 (1948); Leff v. N. Kauf-

man's Inc., et al., 342 Pa. 342 (1941) ; McCrory v. City of Philadelphia et al., 345 Pa. 154 (1942).

The action of mandamus in Pennsylvania is governed by the Act of June 8, 1893, P. L. 345, as amended, 12 PS §1911, et seq., subject to such changes as have been made in procedure by Pa. R. C. P. 1091 through 1098. See Goodrich-Amram Procedural Rules, p. 211. Section 3 of the Mandamus Act, 12 PS §1913, provides that the writ may issue to a person "beneficially interested", such person being one who has sustained an injury special and peculiar to himself as distinguished from the general public: Butcher v. Philadelphia Civil Service Commission et al., 163 Pa. Superior Ct. 343 (1948). Otherwise, the action must be instituted under section 4 of the Mandamus Act, 12 PS §1914, on relation of the Attorney General, or, in certain cases, of the district attorney of the proper county, to procure the enforcement of a public duty. See also Loraine v. Pittsburg, Johnstown, Ebensburg & Eastern Railroad Company, 205 Pa. 132, 135 (1903) ; Commonwealth v. Wilkins et al., 271 Pa. 523 (1922).

In the instant case the action was instituted by plaintiff as a private relator under section 3 of the Mandamus Act. Under this section, therefore, the question is, first of all, whether or not there is a duty upon the Secretary of Revenue to permit plaintiff through her legal representative to take stenographic notes, and, secondly, whether plaintiff has suffered such injury special and peculiar to herself as will permit her as private relator to maintain an action of mandamus. In other words, under the circumstances of this case, was there any duty upon the secretary or his subordinates to permit the taking of these notes, and, secondly, did plaintiff have such interest as would entitle her to have a command issued to the secretary to perform that duty?

The hearing in question was held under the provisions of section 615(b) (4) of The Vehicle Code, May 1, 1929, P. L. 905, as amended, 75 PS §192(b) (4), which provides as follows:

"(b) The secretary may suspend the operator's license or learner's permit of any person, after a hearing before the secretary or his representative, . . . whenever the secretary finds upon sufficient evidence:

"4. That such person was operating any motor vehicle involved in an accident resulting fatally to any person."

Certainly, there is no express language in the above-quoted section of The Vehicle Code which supports plaintiff's contention that the Secretary of Revenue has a duty to permit plaintiff to take notes of testimony at the hearing provided for in this section. Counsel for the parties have not called our attention to any other statute imposing such duties, nor has our independent research revealed any other applicable statutory provision which would impose such duties. For the power and duties of administrative officials with respect to issuing subpœnas, examining and hearing witnesses, see The Administrative Code of April 9, 1929, P. L. 177, as amended, 71 PS §§197, 200.

We can find no official or ministerial duty imposed upon the Secretary of Revenue by virtue of the above-quoted section of the act that would in any way require him to permit plaintiff to take stenographic notes. And if such a duty is nonexistent, then mandamus will not lie. If we were to issue a command in the manner prayed for in the complaint, we would be ordering the Secretary of Revenue to do something that is beyond the line of his duty as defined in the act. This we have no legal right to do.

Plaintiff claims that the hearing contemplated before the Secretary of Revenue was a public hearing.

She so avers in her complaint. It being a public hearing, plaintiff argues in effect that she had a right through her attorney to take stenographic notes, particularly having in mind her relationship to the deceased and her interest in the case. The difficulty with plaintiff's position in this respect is that she reads into the act of assembly words that are not there.

The act of assembly says that the secretary shall hold a hearing. The act does not say the secretary shall hold a public hearing. If the legislature had intended to provide for a public hearing, it could have expressed its intention in very plain and unambiguous language, easily understandable, without resorting to rules of construction. It did so, for example, in the Public Utility Law of May 28, 1937, P. L. 1053, 66 PS §1394, wherein it clearly and expressly provided that all hearings held by the Public Utility Commission should be public. The obvious reason for such provision in the Public Utility Law lies in the fact that the commission's decisions are affected with an universal public interest and concern.

The statute involved in this case makes no such provision. The Vehicle Code says that for the purpose of determining whether or not there shall be a suspension of license, the secretary is to hold a hearing. In other words, the secretary shall cause evidence to be taken before suspending a license and shall give the licensee an opportunity to be heard. There is nothing in the act to show that the legislature contemplated that because of any widespread public interest, the hearing on the question of the suspension of the operator's privilege should be public.

The person concerned and interested in the outcome of the hearing is the operator whose license to drive his car would be affected by the secretary's decision. Due process requires that this person shall have a full,

fair and complete hearing in every respect. In order to meet the requirements of due process, such person's right of appeal to the court of common pleas is guaranteed by section 616 of The Vehicle Code, 75 PS §193. And in the case of a ruling by the secretary adverse to the interests of a person holding an operator's license, the court will hear and determine the licensee's rights de novo on an appeal: Commonwealth v. Cole, 350 Pa. 369 (1944); Bureau of Highway Safety v. Wright, 355 Pa. 307 (1946); Commonwealth v. Herzog, 359 Pa. 641 (1948).

We do not believe that there is any question of due process involved in the action taken by the examiner with respect to plaintiff's request through her attorney to take notes. It must be borne in mind that the hearing was not being held for the purpose of taking any action affecting any substantive rights of this plaintiff, nor could she be deprived of any such rights in the pending proceeding. Her rights not being involved, she could not have been aggrieved by any decision of the secretary: Rich Hill Coal Co. et al. v. Chestnut, 355 Pa. 13, 17, 18 (1946); Commonwealth v. Cronin, 336 Pa. 469 (1939).

We feel that the requirements of the act are met when the secretary holds a full hearing, takes testimony, and gives the licensee an opportunity to be heard and present evidence. It should perhaps be pointed out that there does not appear in this record any objection whatsoever on the part of McCall with respect to the manner in which the hearings in question were being conducted.

We cannot read into the act the requirement that the hearing must be public. To do so would be to extend the meaning of the words of the statute beyond their clearly defined scope and limit. Such enlargement upon the language of the act would not in any way, as we view the matter, aid in the determination of the ques-

tion of the operator's fitness to operate. We are precluded from extending the language of the act beyond its clearly expressed scope and meaning by the Statutory Construction Act of May 28, 1937, P. L. 1019, art. IV, sec. 51, 46 PS §551, which says:

"When the words of a law are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."

See the following cases: Grayson v. Aiman, Inc., 252 Pa. 461, 466 (1916) ; Farmers-Kissinger Market House Co., Inc., v. Reading et al., 310 Pa. 493, 498 (1933) ; Walker v. Pennsylvania Railroad Co., 151 Pa. Superior Ct. 80 (1942) ; Imperial Cardiff Coal Co. Appeal, 156 Pa. Superior Ct. 301, 305 (1944) ; Roth Appeal, 159 Pa. Superior Ct. 145, 152 (1946) ; Lawrence Township School District Tax Case, Peale, Peacock & Kerr, Inc., Appeal, 362 Pa. 377, 383 (1949) ; Pittsburgh Milk Co. v. Pittsburgh et al., 360 Pa. 360 (1948). We therefore, cannot agree with plaintiff's reasoning that the hearing contemplated in the above-quoted section was a public one.

Plaintiff argues that under the provisions of article I, sec. 11 of the Constitution of Pennsylvania she had the right to take stenographic notes of testimony, and that the Secretary of Revenue had no authority to refuse the request of her attorney to do so. This section of our Constitution provides that "all courts shall be open", etc. Plaintiff's argument in effect is that the hearing before the Secretary of Revenue was a court proceeding; that under the above-cited section of the Constitution, such a hearing must be open and public; that therefore plaintiff could have stenographic notes taken of the testimony.

The difficulty with this contention is that the proceeding before the Secretary of Revenue was not a judicial hearing and did not have the status of a

court proceeding. The Supreme Court in Commonwealth v. Funk, 323 Pa. 390 (1936), in an exhaustive opinion relating to the enforcement of reasonable regulations pertaining to the use of our highways, held that the power conferred upon the Secretary of Revenue to revoke or suspend the privilege of operating an automobile is an administrative and not a judicial function. See also Commonwealth v. Cronin, supra.

In a hearing, therefore, for the purpose of determining whether or not there should be such suspension, the Secretary of Revenue is acting in an administrative and not a judicial capacity. This would seem to be a complete answer to the position of plaintiff that this hearing should be open under the provisions of article I, sec. 11 of the Constitution. The hearing before the Secretary of Revenue is therefore not a court proceeding, and it is not governed by the constitutional provision stating that our courts shall be open.

In Kaufman Construction Co. v. Holcomb, supra, p. 520, the Supreme Court expressly stated that the writ of mandamus cannot be used to review or compel the undoing of action taken by a public official in good faith and in the exercise of legitimate jurisdiction. It seems to us that the action taken by the examiner in this case was in the exercise of legitimate jurisdiction, and on the basis of the record before us it would appear that the action was taken in good faith and for the purpose of promoting orderly procedure in protecting the rights of parties involved.

We are of the opinion that plaintiff has not stated a cause of action, for the reason that the complaint seeks to have us command defendant, as Acting Secretary of Revenue, to do a ministerial act, but does not show any duty in the Secretary of Revenue to perform that act. We are also of the view that our

determination in this matter disposes of plaintiff's claim. It is therefore not necessary to consider any of the other questions that were raised by the preliminary objections.

And now, August 22, 1949, for the foregoing reasons, defendant's preliminary objections are sustained and judgment is directed to be entered for defendant.